The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Laura K. Mavretic. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the alleged contraction of an occupational disease, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. Liberty Mutual Insurance Company was the compensation carrier on the risk.
4. Plaintiff's average weekly wage was $334.60, yielding a compensation rate of $223.07 per week.
5. Plaintiff's last day of work for defendant-employer was February 16, 1994.
6. The exhibits attached to the Pre-Trial Agreement were stipulated into evidence.
7. Plaintiff's medical records were stipulated into evidence.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing in this matter, plaintiff was 39 years old. She is a high school graduate and obtained a two-year degree from Alamance Community College.
2. From 1978 to 1984, plaintiff was employed as a sewing machine operator. From 1984 to 1985 she attended computer classes at Guilford Technical Community College. She then worked as a secretary at North Carolina AT University from 1985 to 1990.
3. Plaintiff began her employment with defendant-employer on October 9, 1990, as secretary to the president of Bennett College. In September 1992 plaintiff's position changed to secretary for the vice-president for educational planning/legal counsel.
4. As secretary to the vice-president, plaintiff performed word processing at a computer terminal on an almost constant basis. Her word processing duties included correspondence, minutes of meetings, a personnel manual, newsletters, and legal documents.
5. Beginning in August or September, 1993, plaintiff began having pain, numbness and tingling in her right wrist hand and fingers. She initially sought medical treatment from her family physician and was subsequently referred to Dr. Kuzma, an orthopedic surgeon specializing in hand injuries.
6. In January 1994, after obtaining nerve conduction studies, Dr. Kuzma diagnosed plaintiff as having right carpal tunnel syndrome. During January and February 1994, plaintiff received conservative treatment including medication, a splint, and injections. On February 9, 1994, Dr. Kuzma released plaintiff to return to light-duty work.
7. Plaintiff's job was modified to provide light-duty work until February 16, 1994, at which time she was advised that defendant-employer no longer had light-duty work available for her. She was placed on leave without pay.
8. On March 24, 1994, Dr. Kuzma performed a right carpal tunnel release. At the time of the taking of Dr. Kuzma's deposition on April 10, 1995, plaintiff had not reached the end of her healing period.
9. Plaintiff was released to return to work on June 20, 1994, with a limitation that she be permitted to rotate jobs, which he defined as not doing the same job on a continuous basis but being allowed to alternate repetitive types of activities. Defendant-employer failed to provide work to plaintiff which was within her restrictions, and in a letter dated June 13, 1994, notified the plaintiff that her employment was being terminated.
10. Plaintiff attempted to find employment through various sources, including the Employment Security Commission, beginning in June 1994. She received unemployment benefits from the Employment Security Commission in the amount of $163.00 per week beginning June 22, 1994 and continuing through the week of December 11, 1994.
11. Plaintiff continues to experience some pain in her wrist, especially when the temperature is cold, and has some difficulty sleeping. She continues to receive medical treatment from Dr. Kuzma.
12. Plaintiff was involved in an automobile accident in June 1986 and as a result sustained a neck injury. During the course of treatment for her neck injury, plaintiff experienced pain that radiated into her shoulder and right arm, and some numbness in her right hand and fingers. This condition resolved toward the early part of 1989, and plaintiff had not experienced any difficulties with her right hand and wrist until developing carpal tunnel syndrome symptoms in August or September 1993.
13. As a result of the right carpal tunnel syndrome, plaintiff has been unable to earn any wages in any employment from February 16, 1994 through the date of the hearing in this matter. Plaintiff's incapacity to work during this period of time was caused by her carpal tunnel syndrome. Defendant-employer has not offered plaintiff any work which is within her capacity to earn wages, nor has defendant-employer provided any vocational rehabilitation assistance to plaintiff in order to retrain her for suitable work.
14. As a result of her employment with defendant-employer, plaintiff was placed at an increased risk of developing right carpal tunnel syndrome as compared to members of the general public not so exposed. The repetitive work required by plaintiff's employment with defendant-employer caused, or was a significant factor in the development of, plaintiff's right carpal tunnel syndrome.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. As a result of her employment with defendant-employer, plaintiff developed right carpal tunnel syndrome which is due to causes and conditions characteristic of and peculiar to her employment with defendant-employer and which is not an ordinary disease of life to which the general public is equally exposed outside of the employment. Plaintiff, therefore, has contracted an occupational disease pursuant to the provisions of N.C. Gen. Stat. § 97-53(13). Booker v. Duke Medical Center,297 N.C. 458, 256 S.E.2d 189 (1979).
2. As a result of the occupational disease giving rise to this claim, plaintiff is temporarily totally disabled and entitled to receive compensation at the rate of $223.07 per week beginning February 17, 1994 and continuing thereafter until defendant-employer obtains permission from the Industrial Commission to cease said payment. N.C. Gen. Stat. § 97-29.
3. Defendant-employer is entitled to a credit for the unemployment benefits paid to plaintiff. N.C. Gen. Stat. § 97-42.1.
4. Plaintiff is entitled to payment of all medical expenses by defendant-employer as a result of her occupational disease for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief, and will tend to lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-59.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant-employer shall pay plaintiff temporary total disability compensation at the rate of $223.07 per week beginning February 17, 1994 and continuing thereafter until defendant-employer obtains permission from the Industrial Commission to cease said payments. Amounts which have accrued shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved below.
2. A credit for the amount paid to plaintiff as unemployment benefits shall be deducted from the compensation awarded in Paragraph 1.
3. Defendant-employer shall pay all medical expenses incurred, or to be incurred, by plaintiff as the result of the occupational disease, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief, and will tend to lessen plaintiff's period of disability, when bills for the same have been submitted through defendant-employer.
4. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff in Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the sum due plaintiff and paid directly to plaintiff's counsel. Consideration and designation of this attorney's fee contemplates that counsel for the plaintiff shall continue and is hereby ORDERED to monitor the submission of medical expenses to defendant-employer.
5. Defendant's motions are HEREBY DENIED.
6. Defendant-employer shall pay the costs.
FOR THE FULL COMMISSION
 S/ __________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ ________________ THOMAS J. BOLCH COMMISSIONER
S/ ________________ WILLIAM L. HAIGH COMMISSIONER
CMV/cnp/mj 11/16/95